Franklin E. CLARK, on behalf of himself and all others similarly situated, Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., Defendants.

Franklin E. Clark and Latanjala Denise Miller, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Equifax, Inc., and Equifax Credit Information Services, Inc., Defendants.

Franklin E. Clark, on behalf of himself and all others similarly situated, Plaintiffs,

v.

Trans Union Corporation and Trans Union L.L.C., Defendants.

Nos. CIV.A.8:00–1217–22 to CIV.A.8:00–1219–22.

United States District Court, D. South Carolina, Anderson Division.

Oct. 2, 2003.

William Douglas Smith, William Linwood Mullen, Jr., Johnson, Smith, Hibbard and Wildman, Spartanburg, SC, David Horton Wilkins, Wilkins and Madden, Greenville, SC, Jesse Cordell Maddox, Jr., Glenn, Haigler, McClain and Stathakis, Anderson, SC, Jeffrey G. Casurella, Marietta, GA, L. Hunter Limbaugh, Columbia, SC, for plaintiff.

James John Raman, Spartanburg, SC, Robert K. O'Reilly, Cudahv, WI, for intervenors–plaintiffs.

Lewis Walter Tollison, III, Elizabeth McMillan, Rivers S. Stilwell, Nelson, Mullins, Riley and Scarborough, Greenville, SC, Harold C. Hirshman, Ronnenschein, Nath and Rosenthal, Chicago, IL, Jerome R. Doak, Jones, Day, Reavis and Pogue, Dallas, TX, Frederick L. McKnight, Daniel J. McLoon, Jones Day Firm, Los Angeles, CA, for defendant.

Alton L. Martin, Jr., Clarkson, Walsh Rheney and Turner, Greenville, SC, for intervenors–defendants.

Philip Smith Porter, Danny Raymond Collins, Mark Weston Hardee, James Mixon Griffin, James M. Griffin Law Office, Columbia, SC, John Jacob Pentz, Sudbury, MA, James John Raman, Andrew Todd Darwin, Stacey C. Davis, Holcombe, Bomar, Gunn and Bradford, Edward Randolph Cole, Ward Law Firm, Spartanburg, SC, Cameron G. Boggs, Boggs Law Firm, Alton L. Martin, Jr., Greenville, SC, Benjamin R. Bingham, Bingham and Lea, San Antonio, TX, James Dwight Smith, Leon Roger Storie, James D. Smith Law Offices, Tuscaloosa, AL, Edward W. Cochran, Shaker Heights, OH, Earl P. Underwood, Fairhope, AL, for interested parties.

James John Raman, Spartanburg, SC, Daniel Edelman, Heather Piccirilli, James O. Latturner, Edelman, Combs and Latturner, Chicago, IL, for movants.

## ORDER

CURRIE, District Judge.

The three above captioned class actions, which have been consolidated for purposes of pretrial proceedings, came before the court on September 23, 2003, for a fairness hearing to consider proposed class settlements.[1] A fairness hearing is required by Fed.R.Civ.P. 23(e) which governs approval of settlements of class actions.[2]

After reviewing all affidavits and other evidence in the record and hearing two days of testimony and arguments of counsel, the court[3] concluded that the proponents of the

---

1. The three actions to which this order applies are distinct actions pursued against different Defendants. They were, however, consolidated for pretrial proceedings because of the similarity of the allegations against each of the Defendants. The court determined that the fairness hearings should also be consolidated because the three separate settlements at issue are virtually identical in their terms.

2. *See* below n. 10 (discussion of the standards applied).

3. The case was initially assigned to The Honorable Margaret B. Seymour, who presided over the action until it was reassigned to the undersigned shortly prior to the date set for the fairness hearing. This reassignment was made to allow the fairness hearing to go forward as scheduled despite Judge Seymour's non-availability.

settlements had not met their burden of establishing all matters necessary for approval of the settlements. Nonetheless, the court noted that the substance of the settlements might ultimately be approved if specified concerns could be resolved.

This order summarizes the court's reasons for finding the proof inadequate and for declining to approve the settlements absent further clarification. It also establishes a schedule for further proceedings.

To insure that class members are aware of the results of the hearing, the court will post this order on its own website (www.scd.uscourts.gov), and will direct Class Counsel to post the order on the website previously referenced in the notices (www.fcraclassaction.com).[4] The court will also direct that the date, time and place for any future settlement approval hearing be posted on both websites no less than two weeks before the scheduled hearings. At present, the court has tentatively scheduled additional hearings on January 12 and 13, 2004, at the Matthew J. Perry Courthouse in Columbia, South Carolina. The date, time and place are, however, subject to change.

## BACKGROUND

**Nature of Actions.** The above captioned actions were filed in this court in April of 2000, as putative class actions. The named Plaintiffs[5] assert virtually identical claims in each of the three above-captioned actions, with the primary distinction between the actions being that each is pursued against a different major credit reporting entity. Specifically, the named Plaintiffs allege that Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), by including references to bankruptcy filings in the named Plaintiffs' credit reports when the named Plaintiffs had not, themselves, filed for bankruptcy but were merely joint account holders with or co-signers for persons who later filed for bankruptcy.

Defendants do not deny that they have included bankruptcy references on individual trade lines under these circumstances. They do deny that the inclusion of such a reference is misleading or violates the FCRA. Defendants also deny that Plaintiffs have been injured as a result of the inclusion of the bankruptcy references.

**Class Action Status.** Plaintiffs first sought class certification in August of 2000. Their initial requests for class certification were denied in March of 2001. The denial was, at least in part, based on the fact that the then-pending complaints pursued only a single claim under 15 U.S.C. § 1681n(a), and sought only statutory penalties, rather than actual damages.[6]

Plaintiffs thereafter amended the complaints in July 2001. The amended complaints asserted two distinct legal theories which would have allowed the recovery of actual damages: a claim for willful violation of the FCRA under 15 U.S.C. § 1681n (this time seeking both actual and statutory damages); and a claim for negligent violation of the FCRA under 15 U.S.C. § 1681o (which allows only for recovery of actual damages, fees and costs). Neither the original nor the amended complaints sought relief under any state law.

Plaintiffs then renewed their motion for class certification. This request was supported by a friend-of-the-court brief by the South Carolina Department of Consumer Affairs. Ultimately, the court certified the

---

4. This order shall be referenced on the opening (home) page of Class Counsel's website in a manner designed to draw the viewer's attention to the availability of the order. The website shall not require the viewer to provide identifying information to view the order.

5. Two of these class actions are pursued by a single named Plaintiff, Franklin E. Clark. One is pursued by both Mr. Clark and Latanjala Denise Miller. For ease of reference, the court will refer to the "named Plaintiffs" when referring to all three cases.

6. Under this section of the FCRA, a person (including an entity such as the Defendants), which willfully violates the statute may be required to pay the consumer whose credit is at issue either actual damages or statutory damages of from $100 to $1000, as well as punitive damages, attorneys fees and related costs and expenses. *See* 15 U.S.C. § 1681n(a). Although this section authorizes payment of actual damages, the named Plaintiffs initially sought only the statutory damages.

class in June 2002. Defendant sought permission to appeal the certification of the class. The Fourth Circuit Court of Appeals, however, declined Defendants' request, leaving the class certification order in place but subject to later review. *See* Order of the Fourth Circuit Court of Appeals, CA No. 02–205 (October 21, 2000).

**Mediation and Settlement.** After the Court of Appeals declined immediate review of the class certification decision, the trial court directed the parties to mediate. A separate mediation was conducted in each case which, after further negotiations, led to proposed Stipulations of Settlement in each action.

While the mediations were separate, the terms of the proposed settlements ultimately reached and now before this court for approval are virtually identical, providing three forms of relief: (1) a change in the way Defendants will report the bankruptcy of another on the credit report of a joint account holder or co-signer; (2) specified limited remedies should Defendants violate the agreement in the future; and (3) one free Consumer Disclosure[7] from each Defendant for each class member. *See* Stipulations of Settlement at ¶¶ 18–21.

The settlements *do not provide* either the named Plaintiffs or any class member with any monetary relief for past violations, although they do provide the named Plaintiffs with a minimal "incentive payment" of up to $1,000 for each action in which the named Plaintiff participated. They do, however, fully release Defendants from liability for any prior actions falling within the allegations of

the complaint. *See* Stipulations of Settlement at ¶¶ 39–43.

 **Settlement Approval Proceedings.** Because the present actions are class actions, the court is required to approve the settlement. Fed.R.Civ.P. 23(e). This judicial approval is intended to insure that the rights of the absent class members are adequately protected. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).[8] In addition, notice to the class is required to allow class members who do not desire to be bound by the settlement to protect their own interests, either by excluding themselves from the class (opting out), or by remaining in the class but challenging the fairness and adequacy of the settlement (objecting).[9]

The court first conducted a preliminary fairness hearing in March 2003. As a result of this hearing and review of related submissions, the court gave preliminary approval to the settlements, subject to later challenge by any class members who might object to the settlements. The court also established procedures for identifying and notifying class members of: (1) the existence and allegations of these lawsuits; (2) the terms of the proposed settlements; and (3) the right of each class member to opt-out of the actions or to object to the settlements. With the court's assistance, notices were developed. *See* Supplemental Notice Order (entered July 3, 2003).

Defendants and Class Counsel then undertook the class identification and notification process approved by the court. Defendants have proffered evidence that over four million notices were sent out of which roughly

---

7. Defendants produce different forms of reports and disclosures. As used herein and in the settlement agreements, the term "Consumer Disclosure" refers to a report given directly to a consumer as contemplated by 15 U.S.C. § 1681g. The term "Credit Report," as used in this order and the settlement agreements, refers to the type disclosure covered by 15 U.S.C. § 1681a(d) when that report is given to someone other than the consumer.

8. As the Fourth Circuit Court of Appeals has noted, "[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In*

*re Jiffy Lube Securities Litigation,* 927 F.2d 155, 158 (4th Cir.1991) (further stating: "If the proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interests be adequately represented.").

9. There are a variety of different types of class actions which vary as to whether and how persons can join or exclude themselves from the class. The present actions are "opt-out" class actions, meaning that persons who fall within the class definitions are class members if they do not comply with the procedures for excluding themselves from the class. *See generally,* Fed.R.Civ.P. 23(c)(2).

873,900 were returned as undeliverable. The parties have also advised the court that 3,500 individuals filed timely election forms opting out of further participation in these actions. In addition, court records reflect that 249 individuals filed objections to the settlement (hereinafter referred to collectively as "Objectors"). A total of fifteen objection memoranda were also filed by or on behalf of the Objectors. Likewise, a number of attorneys filed appearances on behalf of Objectors.

The court conducted a fairness hearing beginning on September 23, 2003, as scheduled in the class notices. The hearing continued through September 24, 2003.[10] A number of Objectors were represented by counsel who presented argument and testimony, and who vigorously cross examined witnesses offered in support of approval of the settlements. The court also heard from two individual Objectors who were not represented by counsel, although one of the two was, herself, an attorney.

■ At the conclusion of the hearing, the court determined that the presentation of evidence in support of the settlements was deficient in several respects, most notably as to whether the court-approved class identification and notification procedures had been fully implemented. The court also found the evidence inadequate as to how one of the alternative solutions allowed by the Stipulations of Settlement would be implemented and the degree to which it would benefit class members over current procedures.[11] The court also determined that there were several substantive deficiencies in the terms set forth in the settlement documents. In this regard, the court noted that the Stipulations of Settlement could likely be amended in a way that would correct the deficiencies, but did not require such amendment.[12] *See below* at p. 10 ("Primary Areas of Concern").

While the court expressed concerns with certain details of the Stipulations of Settlement as currently proposed, it declined to adopt a number of the Objectors' more significant claims of inadequacy. Most critically, the court disagreed with the Objectors' contention that the general nature of the relief (prospective only), was necessarily inadequate to support the release of claims for prior damages. The court also noted that the provision of free Consumer Disclosures had some value to each class member. The court, likewise, expressed misgivings about the Objectors' challenges to the general adequacy of remedies for future violations of the Stipulations of Settlement.[13] Nonetheless, as

---

**10.** In conducting the fairness hearing, the court considers both fairness and adequacy. The fairness inquiry seeks to determine whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube*, 927 F.2d at 159. To make this determination, the court considers: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [substantive] area [and] class action litigation." *Id.*

The adequacy inquiry, by contrast, considers the more substantive aspects of the settlement, including:

(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*Id.*

**11.** The Stipulations of Settlement allow the Defendants either to omit the reference to bankruptcy altogether, or to include it with the clarification that the bankruptcy is "of another." Two of the Defendants have implemented changes which omit the reference altogether. This is clearly the preferred remedy of the Objectors. The third Defendant, Equifax, Inc., has implemented changes which include the clarifying reference that the bankruptcy is "of another." Objectors argue that this alternative is inadequate to remedy the underlying problem. While Equifax is the only Defendant which has implemented this alternative "fix," the Stipulations of Settlement would allow the other two Defendants to adopt similar procedures in the future.

**12.** While the court noted these deficiencies in order to allow the proponents of the settlements to correct them, it did not and cannot require that the settlements be modified. *See generally* Manual for Complex Litigation, Third at 240 (Federal Judicial Center 1995).

**13.** The remedial provisions at issue impose both procedural and substantive limits on the remedies which class members might obtain for any future violations of the Stipulations of Settlement. At the same time, they provide the benefit that class members would not be required to

noted above and discussed more fully below, the court found certain deficiencies in the procedural aspects of the remedial provisions for future remedies.

The court also found it doubtful that the "fix" proposed by Defendant Equifax (retaining references to "bankruptcy" but clarifying that it refers to the "bankruptcy of another"), would violate the FCRA. At the least, this is an area as to which the legality of the practice is subject to legitimate dispute.

In addition, the court rejected the Objectors' arguments that the class notice was defective in form. The one inaccuracy related to the time period covered by the release. Defendants agreed that the Stipulations of Settlement would be changed to reflect the date shown in the notice.

■ Clearly, some recipients of the notice may not have fully understood the terms of the settlement. Most particularly, some may have believed that the remedial provisions regarding payment of possible future claims applied to existing claims for prior reports.[14] This lack of understanding, however, would not be due to any misleading wording in the notice. In short, while the notice could have done more to emphasize that the settlement would not result in the payment of any mone-

tary claims as to any prior actions, its failure to emphasize this fact did not make it misleading.

■ For the same reason, the court did not agree with the Objectors that the notice was misleading because it failed to expressly state that Class Counsel were seeking a total of fifteen million dollars in attorneys' fees. The notice revealed that there were three Defendants and that counsel would be seeking five million dollars from *each* of them. In any case, the fees are subject to approval by the court and the amount disclosed is the maximum which Class Counsel agreed to request and Defendants agreed not to contest.[15]

■ The Objectors also argued that the website provided by Class Counsel was misleading in that it suggested that the word "bankruptcy" would be removed from the credit report, rather than that the word would either be removed or language would be added clarifying that the bankruptcy was "of another." The statement, read in full, is not misleading as it notes that the bankruptcy reference can be *clarified* rather than removed.[16] Likewise, the class notice reveals that both options are available.[17]

prove that the actions violated federal law, only that they violated the terms of the Stipulation (which is, itself, a compromise of disputed issues of law). Under these circumstances, an agreement to remedies that are more limited than those provided for statutory violations is not unreasonable.

14. One unrepresented objector who spoke at the fairness hearing expressed such a belief.

15. Because the Stipulations of Settlement were not approved at the fairness hearing and were subject to further negotiations, the court directed that the attorneys' fees previously advanced to Class Counsel (which were then being held in escrow), be returned to Defendants. The court, likewise, precluded Defendants, Class Counsel and counsel for the Objectors from discussing attorneys' fees issues until after any further negotiations as to terms of the Stipulations were concluded.

These requirements were not intended as a comment on the propriety of any prior action by counsel. Rather, they are intended to insure that whatever discussions take place in negotiating the substantive terms of any modifications to the Stipulations of Settlement are not tainted by premature discussion of attorneys' fees. In this

regard, the court notes that the Stipulations of Settlement indicate that attorneys' fees were not discussed until counsel had reached agreement on the substantive terms of the settlements.

16. The website statement of which the Objectors complain reads as follows: "Removal of the 'Bankruptcy' word from credit reports, *or its clarifiction* [sic], should result in improved credit scores." Objections of Amanda Craig at 23–24 (emphasis added). This reference is not misleading because it suggests two alternatives, removal *or clarification*.

17. Under the heading "Summary of the Settlement Benefits and the Release," the notice states that "Defendants have agreed to change their computer systems to *eliminate the particular bankruptcy reference in issue in the litigation.*" Notice p. 3 (Part 2, ¶ 1) (emphasis added). The meaning of the phrase "particular bankruptcy reference" is revealed on the preceding page of the notice which states that the complaint at issue relates to the reporting "for a given consumer who had not filed bankruptcy, that the consumer had a joint account that was in bankruptcy, *without expressly stating that the bankruptcy was that of another person* on the account

Based on the above conclusions, the court did not foreclose the possibility of approval of settlements similar in terms to the settlements currently proposed. The court, instead, established a procedure which allowed for modification of the Stipulations of Settlement, should Defendants and Class Counsel be able to reach agreement, and further approval proceedings if agreement could be reached as to one or more of the Stipulations of Settlement. That procedure is set out below.

## PRIMARY AREAS OF CONCERN

The court identified the following primary areas of concern at the conclusion of the hearing:

1. Remedial provisions for future violations of the Stipulations of Settlement may not be procedurally adequate to serve the intended purposes of the settlements:

 a. the provisions of paragraph 20(a) of the Stipulations of Settlement (relating to the $500 strict liability penalty), may present difficulties of proof as consumers may have difficulty obtaining a "credit report" as that term is defined in the Stipulations of Settlement;

 b. the provisions of paragraph 20(b) of the Stipulations of Settlement (relating to arbitration of actual damages claims for less than $75,000), are unclear as to how the arbitration would be commenced, who would pay fees, and whether the class member would have the assistance of counsel (available payment of attorneys fees);

 c. the provisions for selection of an arbitrator under paragraph 20(b) also present concerns as the single arbitrator is to be selected by the Defendant;

2. The adequacy of the fix proposed by Equifax (and allowed to any Defendant

other than the consumer who was the subject of the credit report." Notice at 2 (emphasis added).

18. Disclosures to the Objectors shall be accomplished through service on T. English McCutchen, III, Esquire, who shall be responsible for further dissemination to all Objectors' counsel.

under their respective Stipulations of Settlement), has not been established;

3. The scope of the claims released is not sufficiently clear. (Potential for confusion is created by the failure to include an express description of the claims released in the Stipulations of Settlement. Instead, each Stipulation of Settlement simply refers back to the corresponding complaint);

4. Compliance with the court's directives regarding identification and notification of the class was not established, although a detailed proffer of evidence was made.

## FUTURE PROCEEDINGS

1. No later than **October 8, 2003,** Class Counsel shall provide the Objectors,[18] with copies of the following: (a) all discovery in this action which is not a part of the public record; and (b) all written communications between Class Counsel and counsel for the defense, including electronic communications, concerning settlement.

To the extent any documents produced are subject to a protective order, that fact shall be shown on the face of the document. Prior to receiving the documents, the Objectors' counsel shall be required to sign an acknowledgment agreeing to be bound by the protective order previously entered in this action. The documents shall not be released to any non-attorney Objector absent prior approval of this court and a showing of need.

2. No later than **November 7, 2003,** Class Counsel and Defendants shall jointly file and serve the Objectors with proposed Modified Stipulations of Settlement, should they agree to modifications to address the court's concerns.[19] At the same time, Class Counsel and Defendants shall submit a brief addressing

19. Any Modified Stipulation of Settlement shall be provided along with a redlined version drawing attention to the changes. Briefing as to the reasons for and impact of the changes is allowed but not required. All documents required to be filed or served herein shall be served on the Objectors. See above n. 18.

382

what, if any, further notice to the class is required. Alternatively, counsel shall advise the court that they have been unable to reach agreement. In that event, the settlements shall automatically be deemed rejected and counsel shall propose a schedule for further proceedings in these consolidated actions.

3. No later than **fourteen days** after service of any proposed Modified Stipulations of Settlement, the Objectors shall file and serve their further objections, if any, to the proposed modifications and their position as to further notification of the class. The Objectors may preserve but shall not repeat their objections to the earlier proposed Stipulations of Settlement.

4. Proponents of any Modified Stipulation of Settlement shall file and serve their reply to the Objectors' arguments within **five** days after service of the Objectors' submissions.

5. If any Modified Stipulations of Settlement are filed, the court will determine the issue of whether further notice is required without a hearing. If the court determines that further notice is not required or can be adequately provided prior to January 12, 2003, then the court will conduct a fairness hearing on the proposed Modified Stipulations of Settlement on January 12 and 13, 2004. At least two weeks prior to the hearing, the time and place of the hearing shall be posted on the court's website and Class Counsel's website.[20] (If the hearing is cancelled or rescheduled, that information will also be posted on both websites no later than January 6, 2004).

**IT IS SO ORDERED.**

---

20. The court is currently planning to conduct the January 2004 hearing in the Matthew J. Perry Courthouse located in Columbia, South Carolina. Anyone objecting to that location should advise the court immediately of the basis of their objection.